## LIONEL LEISURE, INC.

v.

## WAREHOUSE EMPLOYEES UNION LOCAL 169 OF PHILADELPHIA, PENNSYLVANIA.

Civ. A. No. 84–5834.

United States District Court,
E.D. Pennsylvania.

May 2, 1985.

Ross Van Denbergh, of Ehmann & Baldwin, Philadelphia, Pa., for plaintiff.

Samuel L. Spear, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Senior District Judge.

Defendant union represents warehousemen employed by the plaintiff. The parties have entered into a collective bargaining agreement ("C.B.A."). In late April, 1984, one of the plaintiff's facilities was closed and Linda Ryan, along with other employees, was transferred to plaintiff's main warehouse where her husband works as a warehouseman in another department. On May 4, 1984, Ms. Ryan was terminated for violating the employer's policy forbidding related employees from working at the same location. The union maintained that Ms. Ryan was fired without just cause in violation of Article XI(a) of the C.B.A. Pursuant to the C.B.A., the dispute was heard by an arbitrator who ruled that Ms. Ryan was discharged without just cause and ordered her immediate reinstatement with back pay less any unemployment compensation she had received.

Plaintiff has filed suit seeking an order vacating the arbitration award and declaring that the award exceeded the arbitrator's contractual authority and failed to draw its essence from the agreement. Defendant has counterclaimed seeking enforcement of the award plus attorney's fees. The parties have filed cross motions for summary judgment. For the following reasons plaintiff's motion will be denied and defendant's motion will be granted as to all issues except for attorney's fees.

■ The scope of judicial review of a labor arbitrator's award is severely limited. An arbitrator's award must be enforced "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The Third Circuit has defined the concept of when a labor arbitrator's award draws its essence from a collective bargaining agreement as follows:

> [W]e hold that a labor arbitrator's award ... 'draw[s] its essence from [a] collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. .

*Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969).

Two sections of the parties' C.B.A. were considered relevant by the arbitrator. Article V, the contract's management rights clause, states that "the right to ... maintain discipline and efficiency and require employees to observe rules and regulations not inconsistent with this AGREEMENT ... are rights vested exclusively in the Company." Article XI(a) states that the "EMPLOYER shall not discharge or suspend any employee without just cause."

The arbitrator found that the employer showed "a prima facie violation of a long standing company policy which, at all times pertinent hereto, prohibited related employees from working at the same location." However, the arbitrator also found that since the policy had been applied in an inconsistent fashion and without proper notice to the grievant, it could not be used to justify discharging Ms. Ryan.

Both Ms. Ryan and her shop steward testified that they had never heard about the policy. The company failed to produce "a single shred of evidence" that rank-and-file employees had been informed of the company's anti-nepotism policy. The written formulations of the policy that were allegedly distributed to managerial and supervisory employees, did not state the penalty for violating the policy or the gravity of such an offense. As the arbitrator aptly concluded, "[i]t is axiomatic that while an

Employer has the right to establish reasonable rules to insure the effective functioning of its operations, employees are entitled to adequate notice of the Company's regulations and the penalty that will be imposed for violation [sic]."

Moreover, the arbitrator found that the policy was applied in a discriminatory manner. The company currently employs related individuals in the same location who have not been discharged. There was no evidence that the company was planning to terminate any of these employees.

■■ I therefore find that the arbitrator's award draws its essence from the collective bargaining agreement and must be enforced. The defects in the employer's application of its anti-nepotism policy found by the arbitrator make his conclusion that Ms. Ryan was terminated without just cause perfectly rational. There is also nothing irrational in the arbitrator's finding that the just cause for discharge clause should be read as modifying the relevant sections of the management rights clause. The management rights clause clearly states that the employer's rules and regulations must be consistent with the rest of the agreement. The just cause for discharge clause is part of the agreement and it was rational for the arbitrator to conclude that the employer's arbitrary and discriminatory invocation of a vague policy to justify this termination was inconsistent with the concept of just cause. Indeed, a contrary finding by the arbitrator could not have been rationally derived from the contract's language and the law of the shop.

■ Defendant's motion for attorney's fees, however, will be denied. "[A] court may assess attorneys' fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Alyeska Pipeline Serv. v. The Wilderness Soc.*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). There is no evidence that plaintiff's behavior falls into any of the above categories.

An appropriate order follows.